Arthur Leith, J.E. Merit Constructors, LLC My name is Arthur Leith, and I represent Defendant Jacobs Field Svcs, which is the successor of J.E. Merit Constructors. And this is a case which is legally and factually very complex, and with the Court's permission, I'm not going to go into all the nooks and crannies of this case. Well, we've, of course, we've read the brief, so we basically know what the case is about, so you can just move directly to whatever legal points you have. Thank you, Your Honor. That is what I would like to do. And I guess the first legal point, since it was outcome determinative, essentially, in the trial court, is this issue about whether actual or potential liability has to be shown by the party that's demanding indemnity. And in looking through the various Fifth Circuit cases on that issue, and also the district court cases as well, I was struck by the intense fact, intensive analysis that the Court typically goes through in trying to reach that decision in any individual case, and I don't think there is any blanket rule on that. And if Your Honors will indulge me, I just want to read a couple of sentences from Parfait v. Jahnke, which is, I think, considered by both sides to be a very important case on this issue. And in the Parfait decision, the Court distinguished an earlier case, Wiesenon, it's for the Court supporter's benefit, W-H-I-S-E-N-A-N-T, and the Parfait Court said, and I'm quoting now, the Wiesenon case, in which a showing of actual liability was required, is distinguishable. The indemnitore in that case had no real opportunity to contest the original claim, and the record indicated that given the chance he would have chosen to do so, none of these circumstances nor any other suggesting unfairness to the indemnitore are present in the instant case. So I think in Parfait, the Court was looking back to an earlier case and saying, okay, sometimes actual liability has to be shown and sometimes it's only potential liability. It depends on the facts of the individual case. Now in this case, the case that's under presentation today, the fact is that Jacobs was essentially deprived of any opportunity to take part in the case before the death of Mr. Bourgeois, the plaintiff in the underlying Miseau case, and the reason I say that is because Chevron never put Jacobs on notice under the correct contracts, the contracts that we all agree to be at issue now in this case, until after Mr. Bourgeois was deceased. They made an effort to put Jacobs on notice under a contract that everybody now agrees has absolutely nothing to do with this case the day before Mr. Bourgeois died, but I mean that's no notice either. Why is the death of Mr. Bourgeois the critical point in the case? There were two depositions taken of Mr. Bourgeois in the underlying litigation. The first one was a perpetuation deposition before a lawsuit was filed, then the lawsuit was filed, then another deposition was taken. In those depositions in the underlying case, Jacobs was not represented because Chevron didn't tell us that there were going to be depositions in that case or even that the case existed. Chevron then used those depositions to elicit information which was harmful to Jacobs, specifically Mr. Bourgeois didn't even remember working for Jacobs. Chevron's counsel, by cross-examining him, elicited the fact that he had worked for Jacobs at the Chevron facility, and contrary to what you would think a defendant would do, Chevron's lawyers went out of their way to prove that Mr. Bourgeois allegedly was exposed to asbestos while employed by Jacobs at Chevron. Then after Mr. Bourgeois is deceased and there's no chance for us to cross-examine him or to in any way recover from this, then and only then did Chevron make a tender to Jacobs under the contracts that issue in this case. Well by that point, the cake has been baked, to use the vernacular, and there's no way for us to unbake it. So I think under those circumstances, Chevron should have the burden of proving actual liability and not just potential liability, which is something Chevron admitted in the trial court that they are simply not capable of doing. And I think that once the court made that decision and . . . What's your best case? Most of the notice cases talk about giving notice before settlement so you could get in there and be involved in the settlement, and that notice, I think, was pretty clearly given here, so you're relying on the decedent, the plaintiff, being deceased once you got notice. Is there any at all similar case you can point to and say that's the key time for notice? You know, it's a very unusual situation here because it is an asbestos case, it's a meso case, and you know, I do a lot of asbestos work and sadly those cases are kind of a race against time that you want to get the evidence in while the plaintiff is still alive. Very few meso plaintiffs are alive at the time of trial, so I would say this case is sort of a one of a kind. There are some cases that we've cited like the Prime Co. case, for example, where there was held to be a material issue of fact on that and, you know, summary judgment motions were denied, but in this case, in the lower court, the judge granted Chevron summary judgment motion on this legal issue and in doing that, he essentially hamstrung us and I think we said in our brief that it was outcome determinative. There were further legal issues to be decided, but, you know, essentially once he had made that decision, it was very difficult. So to answer your question directly, I'm not sure that any of these cases are exactly like that. A lot of these cases are maritime cases. Wisconsin Barge, for example, involved a barge collision. Everybody knew the barge collision had occurred. It was something that was well known to both parties. This is something which is subtle. This is something which involved alleged exposures that happened in the 80s and the 90s and there's no way for Jacobs to know that that's giving rise to some kind of a claim until they're notified by Chevron. Until then, there's no way to know. So I can't point to any specific case that's exactly like this. This is a very unusual case. But under the facts of this case, we do feel that Chevron, I said before they baked the cake, to change the analogy, Chevron in secret broke all the eggs and then they started cooking an omelet and they assiduously informed Jacobs of their progress in cooking that omelet. And now Jacobs supposedly has to eat the omelet. But our position is they should have told us when they were breaking all the eggs, if you see what I mean. And by not doing that, they really hamstrung our ability to prepare a defense. Now that leads in, in my mind, that leads into the question of, well, what would you have done? If you had been there at the deposition, what would have happened differently? And my answer to that is, this is a very unusual meso case. Most of the meso cases we see involve exposures in the 50s, the 60s, early 70s, when there was a lot of asbestos in these plants, frankly. In this case, we're talking about the 1990s and we see very few meso cases involving alleged exposures in the 1990s. I mean, by that point, you know, there were controls in place and we really didn't see a whole lot of asbestos exposures at that time. So to answer that question, I would say we would have cross-examined him about the precautions that were in place at the time and the steps that were taken to prevent asbestos exposure. Chevron in the deposition took exactly the opposite tack. They tried to show that there were exposures and that put Jacobs on the hook. So, essentially, that's the essence of the argument on the potential liability versus actual liability issue. Now, I do want to reserve some time. Does the Court have questions about that or anything else? As I understand, that's your primary argument here. It's one that you've completely focused on.  You know, my time is limited. There are others which were addressed in our brief and in no way do I want to waive those. I think it's unusual, for example, that the trial court, in ruling on the summary judgment motions, said that the burden of proving the reasonableness of the settlement at trial would be on Chevron and I think that's consistent with Parfait. I think Parfait says that very clearly. And then when we came to the trial, which was conducted on briefs, the judge decided no, the burden is going to be on Jacobs to show the unreasonableness of the settlement. Well, it's awfully hard to tell from Louisiana case law, isn't it? The case law is sort of, there is ambiguity in the case law, I will concede that. I think that Parfait indicates that, and this, Parfait is sort of the fountainhead on this issue as on so many other issues in this case, Parfait seems to indicate that the burden is on the indemnity to prove the reasonableness of the settlement amount. And I suspect that the trial court was relying on that in his summary judgment ruling when he identified the issues that were going to be discussed and who would bear the burden at trial. For some reason, when it came down to the trial, he took the opposite tack and put the burden on the alleged indemnitore, Jacobs, to establish that in fact the settlement was unreasonable, which of course is a difficult burden. But I think we did carry that burden even under the construct that the trial judge handed us for the trial. So my feeling is based on Parfait, it really should be a burden on Chevron to prove the reasonableness of the settlement. They really didn't do that other than to ask the court to take judicial notice of some large verdicts in civil district court in MISO cases and that's fine, but I mean the question is, what is the value of this specific case? And I didn't feel that the information about MISO verdicts was even put into evidence, so we never had a chance to object to it. Chevron just asked the court to take judicial notice and apparently the court did. I assume it would be, if we were to agree with you but only on that issue, it would be a fairly easy process to remand for the district court to apply the correct burden. It's all on the briefs anyway, as you said. Yes, I think that's right, Your Honor. I think that would be a very limited trial and that would be very doable. And given the contradictory rulings of the district court, and I'm not casting any aspersions on the judge, I think he was trying to follow the law as he understood it, but I think the fact that he changed his mind in midstream after the summary judgments were there, and so I think a remand, as Your Honor has suggested, would be appropriate on that issue. There are many other legal issues I could talk about this case for a long time, but I do want to reserve some time. You've saved your five minutes for rebuttal, Mr. Lee. Thank you. Thank you, Your Honor. Gallup. May it please the Court. I was going to start with the actual versus potential liability issue first, unless the Court has another issue it would like for me to address before that. We will let you know. Thank you. As the Court knows from all the cases, the whole issue about do we, the indemnity, have to establish actual or potential liability in the underlying case. There are two ways for the indemnity to only have to establish potential liability. One is notice and one is contract, and I'd like to address both of those. I'm going to start with notice. The cases say that we have to give, we as the indemnity, have to give the indemnitor notice so that the indemnitor has an opportunity to participate in the settlement or take over the defense of the case. Now what Jacobs is claiming in this case is that's not good enough. They claim that Chevron intentionally withheld the notice, allowed the depositions to go, and essentially gained the system or made an omelet as I heard this morning. But the fact is that in this case, this Court requires factual assertions like that to be supported with record citations. There is not a single citation to this record that Chevron intentionally withheld notice, had the contract, but withheld notice until after the deposition. That is nowhere in this record. And the reason is, one, it didn't happen, but more importantly, two, Jacobs never did any discovery on Chevron in this case. There's no Chevron witness that said, yeah, we had the contract the whole time, but we waited until after the deposition to put you on notice. That's nowhere in the record because it doesn't exist. They didn't do discovery and it didn't happen. So a fact— Let's look from the deposition, though, that it was only at the prompting of the lawyer that he identified J.E. as the person he was working with at the time. But an important point of that is Chevron's lawyer did not start that. Before the deposition, the plaintiff, Mr. Bourgeois, in the underlying case, sent out the case was filed, which is kind of crazy-sounding, but that's what happened. And in those interrogatories, it specifically says, when I worked at Chevron, I worked for Kostmeyer, Payne & Keller, and J.E. Merritt. That was before the deposition. So it wasn't Chevron who started it. It was the plaintiff who started it before the deposition. Now, any lawyer going to take a deposition, if he doesn't ask about—he or she doesn't ask about interrogatory responses, that wouldn't be a good job, in my opinion. So they try to spin it that Chevron brought it all up when, in fact, as Judge Ashe pointed out, it was the plaintiff, Mr. Bourgeois, that came—that said in interrogatory responses prior to the deposition. But then I guess that raises the question why, at that point, notice wasn't given to Jacobs. If the interrogatory says their predecessor might be involved. Right. So the question is, frankly, you've got to have the contract. We can't put somebody on notice without a contract that has an indemnity provision in it. Chevron, Orenight, is a facility that was built in World War II. It has had a substantial number of contractors and contracts. As a practical matter, it is not easy sometimes to put your hands on a contract. And that is shown in this case because the three contracts that we are here about today, we had to subpoena from them. We didn't have them. We couldn't find them. We had to subpoena from them. So the three at issue in this case, we had to subpoena from them. So in answer to your question as why not now, we didn't have the contract at that time. And then when we first put them on notice, it was with a contract that actually didn't apply to Mr. Bourgeois' work. And it was only after the subpoena, which they responded to belatedly, that we got the contracts and immediately tendered again for the second time. So getting back to the notice issue is that all of this parade of horribles that they say we did, there is nothing in the record at all as to the timing and why that happened. What is in the record is when we got the three contracts at issue, we tendered within a week. And in total, we had two tender letters and 11 emails to Jacobs and its lawyers asking them to participate in the settlement or take over the defense. We said, here's what we're thinking we're going to settle for. And they said, three times, they said no. And what's important, I think, is in the three times that they said no to us, which are in the record at 898, 900, and 903, the three times they said no, they never once mentioned this notice issue. They never once said, you didn't tell us in time. We don't have an opportunity to depose the plaintiff. They never mentioned that. They made all their legal arguments and never mentioned that. So the notice that we gave in this case, again, two tenders and 11 emails, goes far beyond what you see in any of the other cases cited by either side in this case when they look at when the notice was given and how the notice was given and how many times. It is more than sufficient under the cases. In fact, of all the cases I read, it's by far the most. I'm going to move on to contract, the contract side, unless somebody else has a question about notice. The second way under the cases that an indemnity is only required to show potential liability is if the indemnity demand is based on contractual indemnity, that is, a written contract. We cite many, many, many cases on page nine of our brief that are cases from within this circuit and Louisiana state cases. When you look at those cases, it says when the contract is based, excuse me, when the indemnity demand is based on a written contract, the indemnity only has to establish potential liability in the underlying case. Now, of all of those cases that we cite on page nine of our brief, there are two I want to highlight because these two where actually the indemnitor says, I didn't get notice. These two are the board decision from this court in 1996. In that case, the indemnitor claimed insufficient notice and this court said because this indemnity claim is based on contract, the potential liability standard applies and it didn't even give any argument or discussion about the raise, the indemnitor's claim of insufficient notice. Second, Kansas City Southern Railway, which is a case from 2010 in the Western District of Louisiana, that was a contractual indemnity case. Notice was given four days before the settlement, four days. In the subsequent indemnity action, the indemnitor said insufficient notice. The judge says that no, because it's based on a contract, potential liability applies. Also, I think important, the court said there's no notice requirement in the contract when it comes to indemnity. In our case here, the three contracts at issue, which are in the record at 211, 256, and 309, there is no notice requirement for the indemnity provisions. The next thing, issue I would like to address is the evidence of potential liability in this case. In their briefs, they go through and they make arguments under Rule 32 of the Civil Procedure Rules, and then hearsay with respect to depositions taken in the underlying case. The standard is, were we potentially Chevron, was Chevron or not potentially liable in the underlying case? Cases say, did we have a reasonable apprehension of liability? Whether or not somebody is potentially liable in an underlying case has to be judged on the record from the underlying case, not more, not less. It should be judged on the record from the underlying case, not part of the record, not some of the record. So if you're looking at potential liability in the underlying case, you can't decide that based on a different record than the underlying case. So our position is, when you look at that, the court looks at the underlying case and decides whether there's potential liability or not. Many cases cited in our briefs have done just that. The Wisconsin Bar Court did it, the Board Court did it, both Fifth Circuit cases, the Kansas City Southern Railway, Transcontinental Pipe, and others have just looked at the underlying record. No court, and no case, and no decision cited by Jacobs or anywhere in this brief has gone to the underlying record and said, I'm going to consider this part, I'm not going to consider that part. I'm going to consider this testimony, but I'm not going to consider that testimony. There's no case, no decision that has done that because it's the underlying record as a whole, not some, not part, but the whole record. The next issue is the reasonableness of the settlement, which Mr. Leath touched on. He said that Judge Ash changed his mind. I would disagree with that. The original opinion came out by Judge Ash. There was a statement in there about the reasonableness of the settlement. A lot, like a lot of the opinions that we read, there's just a statement. When we get to who would have the burden to prove that, Judge Ash, I don't think changed his mind. I think he went and looked at it. Frankly, no brief could do as good a job as Judge Ash did taking all of these cases on who gets the burden. It's thorough. It's thoughtful. He goes through and looks at Parfait, Wisconsin Barge, the Mollett case, the Gilbert case, the Chevron-Ornyte versus Cajun case that we did two years ago. You agree, though, that it's hard to tell from all those cases, isn't it? It's a pretty close question about the burden. What I would agree is, as Judge Ash found, there's no Louisiana case on point as to who gets the burden of proving the reasonableness of the settlement. But there is the general principle of Louisiana law that the plaintiff has the burden of establishing every element of its case. Certainly. Certainly. Certainly, that's true for Louisiana and other states as well. But the difference . . . What's the rule that prevails in most states? With respect to . . . Who bears the burden? Yeah. So, what we would say is that what Judge Ash found is, having looked at those cases and having also looked at insurance cases, which I think are important because it's similar. And in an insurance case, when an insurer wrongfully denies coverage, that insurer has the burden to prove the settlement is unreasonable. Judge Ash took that into account and found that he believed the Louisiana Supreme Court, if faced with this question, would find, in his words, were the prevailing view of the courts in this circuit, that once an indemnity, like Chevron, establishes potential liability, the burden shifts to the indemnitor to prove that it was an unreasonable settlement. Now, Judge Costa, to your question, what do most cases . . . We cite at pages 23 and 24 of our brief cases from other jurisdictions that hold that same way. We believe that's the majority rule. Certainly, Jacobs has cited no cases that would go the other way when faced . . . actually establish who has that burden. And Judge Ash did, in a thorough review of all of this, including the insurance cases, and came up with that conclusion. We've cited some additional cases, as I said, on page 23 and 24 of our brief. What's the rationale for reversing the usual burden being on the plaintiff? Thank you for that question because that's what I was going to say next. Stepping back from all of this, what happened in this case was, you see in the record, we wrote, in addition to our two tender letters, there are eleven emails quoted in our brief to them. In those emails, we say, we believe we can settle this case between $500,000 and $600,000 and we want you to come to participate and defend. We told them that over and over and over. They didn't come back to us and say, you know, we don't think the case is worth that, but we'll throw in $250,000. We think it's worth $250,000. They didn't do that. They just said no. So the rationale is, if you give . . . if an indemnity gives an indemnitor an opportunity to participate, and they just say no. They don't come back and say, we think it's worth a little less, so we'll contribute something. They just said no. So if they have that opportunity, they don't take it, and they say no, they shouldn't be able to come back after the fact and say, you shouldn't have paid that much. Because they had that opportunity, and they didn't take it at all. And that would be the rationale is, if they're given a chance, and they don't do it, if they're going to come back and complain about it, and some courts would say, you can't . . . you're stopped from complaining about it, you had your chance. But certainly, they should have the burden of proving that it's not reasonable, or unreasonable. The . . . I'm . . . I guess the last issue I want to talk about is the . . . there are arguments about the contract and the language of the contract being ambiguous. I think in their reply brief, they say Chevron doesn't argue that the contract was ambiguous. That couldn't be any further from the truth. We think the indemnity language contained in the three contracts are unambiguous. They do raise an argument about this issue of sole negligence and willful misconduct. I would say and point out that they did not raise that argument below. The argument below with respect to the arguments on the contract, and it's found in the record at page 1227 through 12230, they never raised this argument about the word sole, and does it apply to negligence and willful misconduct. They never raised that below, and it's in the record at those pages. The other arguments that, with respect to attorney fees, I think are briefed as well, and there's really nothing I can add. Are there any other questions that the Court would have? All right. Thank you, Mr. Gault. Mr. Gault, please, for the rebuttal. Yes, just very briefly, Your Honors. There are many, many issues in this case, as I said at the outset, and whether I've addressed them or not addressed them today, we certainly preserve all the issues that we've raised in our briefs. I just want to touch on a couple of points that Chevron's counsel made and rebut them. The first one is that Chevron somehow was supposedly compelled to ask Mr. Bourgeois in his deposition about his employment by Jacobs because of discovery responses that had been provided by the plaintiff before the perpetuation deposition. I want to point out that in these mesothelioma cases, the plaintiff is very, very, very rarely present and testifying at the time of trial. When a perpetuation deposition is given, that is the trial of the case, and at this point, it's simply the trial. The plaintiff went first. The plaintiff's counsel went first. He did his direct. He asked Mr. Bourgeois absolutely nothing about Jacobs or about Mr. Bourgeois' work at Chevron for Jacobs as opposed to other contractors. So at that point, if the testimony had been adjourned after the plaintiff's direct, there would have been no evidence in the record about Jacobs. Whatever the unsworn discovery responses, which are not admissible, say or didn't say, the fact is Chevron could have let that alone. Instead, they went back on cross-examination, and they elicited testimony that was harmful to themselves and to Jacobs. So I don't think the mere presence of a statement in some unsworn discovery responses is an excuse or sufficient rationale for what they did at the deposition. One or two other points. I think that at any time Chevron could have cured—any time when Mr. Bourgeois was alive, Chevron could have cured this by third-partying Jacobs into the litigation, or they could have given us notice of either one of the two depositions of Mr. Bourgeois. By failing to do that, they really prejudiced Jacobs' rights, and that, of course, feeds into both of these legal issues that we've been talking about. Finally, I just want to rebut the issue about the admissibility of the deposition. This is more than an issue about just the record of the underlying case and what's there or not there. In the case in the lower court, Chevron's indemnity lawsuit against Jacobs, Chevron clearly used the deposition of Mr. Bourgeois against Jacobs, and under Rule 32, that is not permissible. Again, in mesothelioma litigation, that is a really, really big issue. I know the Louisiana Supreme Court has addressed it in Trasher v. Torito, and they have taken a very bright-line test and said, if you defendant were not at that deposition and didn't have the opportunity to cross-examine that mesoplaintiff, that deposition may not be used against you. I don't think that the mere fact that we're at one move, that is that Chevron's trying to use it against Jacobs in an indemnity case, should change that evidentiary rule. Why is it being used for the truth of the matter asserted? Isn't it just being used to show its effect on Chevron, thinking they needed to settle this lawsuit? Well, that goes back to the potential versus actual liability issue, I think, to a large extent. No, I think it is being used for the truth of the matter asserted, and therefore, it's hearsay. And then, apart from the hearsay— Whether it's true or not that he was working for Jacobs at the time, Chevron had a reason to think that's what the evidence was going to show at the trial, and that's why they settled. I mean, that would be their argument. Yes, but that only goes to the hearsay aspect under Federal Rule of Evidence 408. There's also a separate issue under the Rule of Civil Procedure, Article 32—I'm using Louisiana terms—Rule 32, that the deposition should not be admissible against any party that wasn't there, unless there was a cross-examination by a party that had a similar interest, and very obviously, Chevron did not have a similar interest to Jacobs with regard to that deposition. So I think that it's more than just a hearsay issue, Your Honor. I think there's also an implication of Rule 32 on this issue of the deposition. I see that I've pretty much used my time. If there are any questions, I'll be glad to answer them. All right. Thank you, Mr. Leath. Your case is under submission, and the Court will take a brief recess before hearing the final case.